JIAO YING QU, Petitioner,

v.

Alberto R. GONZALES, Attorney General, Respondent.

No. 05–5363–ag.

United States Court of Appeals, Second Circuit.

Nov. 13, 2006.

Alexander K. Yu, Law Office of Alexander K. Yu, New York, NY, for Petitioner.

Anthony P. Nicastro, Office of Immigration Litigation, United States Department of Justice, Washington, DC, (Rodger A. Heaton, United States Attorney, Hilary W. Frooman, Assistant United States Attorney, United States Attorney's Office for the Central District of Illinois, Urbana, IL, on the brief)., for Respondent.

PRESENT: WILFRED FEINBERG, PIERRE N. LEVAL and JOSÉ A. CABRANES, Circuit Judges.

### SUMMARY ORDER

Petitioner Jiao Ying Qu, a native and citizen of the People's Republic of China ("China"), seeks review of an order of the BIA affirming an order of Immigration Judge ("IJ") Barbara A. Nelson denying petitioner's application for asylum, withholding of removal pursuant to the Immigration and Nationality Act of 1952 ("INA"), and relief under the Convention Against Torture ("CAT"),[1] and ordering her removed to China as an inadmissible alien. *In re Jiao Ying Qu*, No. A 96 233 048 (B.I.A. Sept. 8, 2005), *aff'g* No. A 96 233 048 (Immig. Ct. New York City March 30, 2004). We assume the parties' familiarity with the underlying facts and procedural history of the case.

Where, as here, the BIA affirms and adopts the IJ's decision, but rejects one of the grounds relied upon by the IJ, we review the IJ's decision as modified by the BIA. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir.2005). We review agency findings of facts under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 & n. 7 (2d Cir. 2004). The "particular deference" with which we treat credibility determinations is "meant to ensure that credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice." *Zhou Yun Zhang*, 386 F.3d at 74.

In the instant case, we believe that one of the two "serious inconsistencies and problems" with petitioner's testimony relied upon by the IJ in her adverse credibility determination may reflect misstatements of the facts in the record, and that the second, standing alone, may not be

---

1. United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 85; *see also* 8 C.F.R. § 1208.16(c) (regulations implementing the CAT).

enough to support an adverse credibility finding. The other reasons given by the IJ for finding that petitioner was not credible appear to presuppose the existence of the inconsistencies that we now instruct the agency to revisit. Therefore, remand is appropriate to allow the agency to determine whether, considering the record as a whole, an adverse credibility determination is still warranted.

Stating that petitioner was "not credible or reliable as a witness because of serious inconsistencies and problems with her testimony," the IJ first noted that at one point during petitioner's testimony, petitioner testified that she had an IUD inserted in November 1998. This date conflicted with the date she had provided in her written application—January 1998— and was inconsistent with testimony that she had the IUD removed prior to a medical examination in March 1998. However, the IJ did not mention that petitioner later corrected her testimony, stating that "[w]hen [she] was held for the IUD insertion, that was in January of '98." We do not speculate as to whether this subsequent statement, which conforms to petitioner's written application, was an honest rectification of an earlier slip-of-the-tongue or translation error, or whether it was a calculated attempt to cover-up being caught in a lie. We do, however, think it necessary that the factfinder consider these possible implications upon remand, particularly where, as here, the IJ's decision suggests that the November date given by petitioner was an isolated discrepancy from her written application and other testimony. Cf. *Zhou Yun Zhang*, 386 F.3d at 68, 76–77 (holding that petitioner's repeated testimony as to differing dates of

his wife's sterilization supported adverse credibility determination).

The only other inconsistency commented on by the IJ that was not rejected by the BIA [2]—either within petitioner's testimony or between petitioner's testimony and written application—concerned the fact that petitioner "was very contradictory regarding where she lived and whom she lived with." For example, petitioner testified that the address on her written application, where she purportedly lived from 1997 to 2003, was actually her mother's address, and that she had a primary residence elsewhere until moving in with her mother in 2000. If, taking into account the full record regarding the date of petitioner's IUD insertion, the IJ were to determine that the rest of petitioner's testimony, including the testimony as to the IUD insertion, was "generally consistent, rational, and believable," *Diallo v. INS*, 232 F.3d 279, 288 (2d Cir.2000), then the IJ would have to consider whether the contradictory evidence about where petitioner lived from 1997 to 2000 was "relatively minor and isolated," *id.* Again, we make no comment as to the outcome of this inquiry.

After discussing the inconsistencies within petitioner's testimony and between petitioner's testimony and written application, the IJ pointed out that petitioner had "lied on previous occasions to U.S. Government authorities" when she was apprehended entering the United States at the U.S.Mexican border. Therefore, "[c]onsidering [petitioner's] willingness to lie to Immigration officials," the IJ could not "put much weight on [petitioner's] inconsistent and contradictory testimony." To the extent that this propensity-to-lie rationale

---

**2.** The IJ found that petitioner had described a forced abortion "in very general terms and in very odd terms." The BIA adopted and affirmed the IJ's decision "except for the specif-

ic statement—to the extent it may have been part of the adverse credibility fining—as to whether [petitioner's] description of an alleged abortion was 'odd' or 'general.'"

presupposes petitioner's "inconsistent and contradictory testimony," any reevaluation that the agency makes with respect to the date of petitioner's IUD insertion and pre–2000 address may change the importance of the border interview to the IJ's credibility determination. To the extent that the IJ's reference to the border interview reflects not just a "willingness to lie," but specific statements that conflict with statements in petitioner's testimony and written application, the agency must consider the reliability of those statements before relying on them. *See Ramsameachire v. Ashcroft*, 357 F.3d 169, 179–80 (2d Cir.2004). Similarly, we cannot say what effect revisiting the record with respect to petitioner's IUD insertion and pre–2000 address will have on the weight assigned by the IJ to petitioner's failure to provide reliable corroborating evidence.

Because the IJ's adverse credibility determination prevented petitioner from proving eligibility for both asylum and withholding of removal, and the BIA reviewed petitioner's CAT claim "based solely on the same testimony she presented for her asylum and withholding of removal claims," all three claims should be remanded to the BIA.

For the reasons stated above, the petition for review is **GRANTED,** the decision of the BIA is **VACATED,** and the case is **REMANDED** for further proceedings consistent with this opinion.